UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**MELANIE E. DAMIAN, as**       Case No.: 2:13-cv-14050-MARTINEZ-LYNCH
**Receiver for the Receivership**
**Estate of WE THE PEOPLE,**
**INC. OF THE UNITED STATES,**      Ancillary Proceeding Case No.: _____

    **Plaintiff,**

    v.

**National Annuity Consultants, LLC,**

    **Defendant(s),**

_____/

## COMPLAINT

Plaintiff, Melanie E. Damian, in her capacity as the Court-appointed Receiver (the "Receiver") of the Receivership Estate of We The People Inc. of The United States, (the "Receivership Estate"), files this Complaint alleging claims for unjust enrichment and restitution/money had and received against National Annuity Consultants, LLC (the "Defendant") and alleges as follows:

## THE PARTIES

1. The Receiver was appointed by the United States District Court for the Southern District of Florida pursuant to the Court's Order Appointing Receiver, dated February 13, 2013 (the "Receivership Order"), in the action styled *Securities and Exchange Commission v. We The People, Inc. of The United States*, Case No. 13-14050-CIV-MARTINEZ (the "Receivership Action"), pending in the United States District Court, Southern District of Florida (the "District Court" or "This Court").

2. The Receiver was appointed over the Receivership Estate of We the People, Inc. of the United States ("WTP") which is a Massachusetts corporation registered under Section 501(c)(3) of the Internal Revenue Code with its principal place of business in Tallahassee, Florida.

3. In the Receivership Action, venue lies in the United States District Court, Southern District of Florida because certain acts and practices committed by WTP and its principals that are the subject of the Receivership Action occurred in the Southern District of Florida and certain investors in WTP reside in the Southern District of Florida. Further, WTP consented to venue in This Court. [Receivership Action, ECF #1 at ¶6].

4. Defendant is and was a resident(s) of Texas at all material times.

5. Defendant acted as a "Marketing Advisor" for WTP and in this role received commissions from WTP in exchange for obtaining investors in investment products offered by WTP.

6. The commissions that the Defendant received are the funds that are the subject of this action that WTP obtained fraudulently from investors and transferred to Defendant. As such, WTP conferred a benefit on the Defendant for which the Defendant was unjustly enriched.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the Receivership Action pursuant to Sections 20(b) and 22(a) of the Securities Act and Sections 21(d) and (e), and 27 of the Exchange Act. This action, which seeks to recover assets of the Receivership Estate, is related to the claims in the Receivership Action, over which This Court has original jurisdiction pursuant to Title 28, United States Code, Section 1331, in that this action forms "part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Therefore, This Court has subject matter jurisdiction over this action pursuant to the principles of ancillary

or supplemental jurisdiction under Title 28, United States Code, Section 1367 and pursuant to Title 28, United States Code, Section 754.

8. This Court has personal jurisdiction over the Defendants pursuant to Title 28, United States Code, Sections 754 and 1692. The Receiver was appointed in this District; the instant Complaint is brought to accomplish the objectives of the Receivership Order and the assets of the Receivership Estate are located in multiple districts. The Receiver has filed a copy of this Complaint and the Receivership Order in the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 754.

9. Venue is also proper in the Southern District of Florida pursuant to Title 28, United States Code, Sections 754 and 1692, because this action is brought to accomplish the objectives of the Receivership Order and is thus ancillary to the Court's exclusive jurisdiction over the Receivership Estate.

## PROCEDURAL BACKGROUND

10. On February 4, 2013, the Securities and Exchange Commission ("SEC") filed a complaint (the "SEC Complaint") against WTP seeking an injunction and damages arising from WTP's Charitable Gift Annuity Investment Offerings which were in violation of the anti-fraud provisions and registration provisions of federal securities laws. [Receivership Action, ECF #1].

11. Specifically, the SEC Complaint set forth claims against WTP for violations of the Securities Act of 1933 and the Securities Exchange Act of 1934 (including Rule 10b-5 promulgated thereunder) based on the Receivership Defendant's "false and misleading statements made in connection with the offer, sale, and purchase of securities," *i.e.,* the issuance of the Charitable Gift Annuity agreements. *Id.* at ¶3. That same day, the SEC filed unopposed

Motions for Judgment [Receivership Action, ECF # 3], and to Appoint a Receiver [Receivership Action, ECF # 4.].

12. On February 8, 2013, the Court entered the Receivership Order, which required the Receiver to "assume and control the operations of the Receivership Defendant." [Receivership Action, ECF #6 at ¶4]. The Receiver has standing to bring this claim pursuant to the Receivership Order, which obligates the Receiver "to sue for and collect, recover, receive and take into possession from third parties all Receivership Property and records relevant thereto[.]" [*Id.* at ¶6.B.].

13. The Receivership Order further provides that the Receiver is authorized, "to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate…[including] the disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief… as may be necessary to enforce the Receivership Order." *Id*. at ¶42.

14. Based upon information obtained by the Receiver, Defendant received commissions from WTP for procuring Charitable Gift Annuities to which Defendant was not entitled causing the Defendant to be unjustly enriched.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

15. As a result of the SEC investigation into the operations of WTP, the SEC alleged in its Complaint filed in the Receivership Action that WTP "defrauded investors by making false and misleading statements in connection with the offer, sale, and purchase of securities" violating the anti-fraud provisions of federal securities laws and offered and sold securities in violation of the registration provisions of the federal securities laws. [Receivership Action, ECF #1 at ¶¶1-2].

16. The SEC Complaint further alleged that WTP "raised over $75 million in assets from approximately 400 investors in over 30 states, almost all of whom are elderly" by enticing them to transfer stocks, annuities, real estate, or cash to WTP in exchange for an investment product that WTP called a "tax-deductible gift annuity" or "charitable gift annuity" ("CGA"). *Id.*

17. WTP's marketing and promotional materials for the CGA offering contained misrepresentations and omissions of material fact including false statements regarding the value of the CGA that investors received in exchange for the assets transferred to WTP and omissions regarding the sizable commissions WTP paid to third-party promoters based on the sales of its products. *Id.* at ¶2.

18. During the period WTP was issuing and exchanging securities, it claimed to operate as a non-profit organization. However, rather than operate as a charity WTP operated for the primary purpose of issuing CGAs. WTP used the proceeds of the CGA offering to pay substantial sums to the principles of WTP, third-party promoters and consultants and misrepresented the amounts it donated to public charities. *Id* at ¶14.

19. In furtherance of the fraud, WTP utilized third-party Marketing Advisors who signed agreements with WTP to procure CGAs from Investors.

20. WTP provided the Marketing Advisors with marketing materials containing false and misleading statements regarding the CGA offerings, including flyers, letters, illustrations, and even videos, to use in soliciting the investments.

21. WTP paid the Marketing Advisors significant commissions ranging from 7-10% of the cash value of the assets received by WTP in exchange for procuring the CGAs, less the cost to WTP of liquidating the assets. The amounts of the commissions paid to the Marketing Advisors ranged from approximately $550.00 to $409,000.000.

22. The Marketing Advisors who held themselves out to investors as knowledgeable financial professionals, knew or should have known that they were not entitled to receive any commissions for procuring the CGAs because it is not in conformity with industry standards and moreover, a violation of federal law for WTP to pay commissions based on the value of CGAs.

23. The Model Standards of Practice for the Charitable Gift Planner which were adopted by the National Committee on Planned Giving and the American Council on Gift Annuities provide that "commissions paid as a condition for delivery of a gift are inappropriate."

24. Moreover, the Philanthropy Protection Act of 1995 prohibits the payment of commissions or remuneration to anyone based on the value of a charitable gift annuity given to a public charity. Philanthropy Act § 4(b) codifies at 15 U.S.C. §78c(e)(2)).

25. The Defendant in the instant action was a Marketing Advisor for WTP who received commissions from WTP for procuring CGAs on WTP's behalf based on the value of the CGAs procured.

26. Because the Defendant was prohibited by law from receiving commissions for procuring CGAs on behalf of WTP based on the value of the CGAs, the marketing agreement entered into by the Defendant with WTP (the "Marketing Advisor Agreement") which entitled the Defendant to receive a commission of 7% of the "Net Contribution"[1] to WTP was void.

27. All conditions precedent to filing this Complaint have occurred, been satisfied and/or performed by the Plaintiff, or have been waived and/or otherwise been excused.

28. This action is brought within the pertinent statutory limitations period.

---

[1] The Net Contribution was defined as "the value of assets as received by WTP in a form that can be immediately converted to cash by WTP, less costs incurred by WTP in liquidating the Assets." *See* Marketing Advisor Agreement attached hereto as **Exhibit A**.

29. The Plaintiff has retained the undersigned law firm to represent her in this action and is obligated to pay them reasonable attorneys' fees and costs for their services.

## THE TRANSFERS

30. WTP made transfers directly to the Defendant constituting payment of commissions (the "Transfers") within the last four years of the date of this Complaint.

31. The Transfers originated from one or more of the WTP bank accounts.

32. The Transfers from WTP to the Defendant total $19,850.92 and are reflected in **Exhibits "B" and "C"** attached hereto[2] and incorporated, by reference, herein.

## COUNT I-UNJUST ENRICHMENT AGAINST DEFENDANT

33. Plaintiff repeats, re-alleges and incorporates by reference the allegations set forth in paragraphs 1-32 of this Complaint as if fully set forth herein.

34. WTP conferred a benefit on Defendant when WTP transferred funds constituting property of WTP in the amount of $19,850.92 directly to the Defendant as payment for commissions.

35. The Defendant had knowledge of the benefit being given to it by WTP and voluntarily accepted and retained the benefit conferred.

36. In addition, the Defendant knew or should have known that it was not entitled to receive commissions for procuring a charitable gift annuity based on the value of a charitable gift annuity given to a public charity.

37. It is inherently unfair and inequitable that the funds of other investors defrauded by the Olives fraudulent scheme and which the Defendant is not entitled to are retained and used

---

[2] Exhibit B is a summary of the Transfers. Exhibit C includes copies of bank production reflecting canceled checks in relation to the transfers.

7

to personally benefit the Defendant, rather than being returned to the Receivership Estate for the benefit of all of the defrauded investors.

38.     As a direct and proximate result of the Defendant's retention of the $19,850.92 that WTP unlawfully transferred to Defendant, the Receivership Estate has been diminished, and, under the circumstances, equity dictates that the Defendant return the funds that were received from WTP, and any assets acquired with those funds, to the Receiver for the benefit of all of the defrauded investors.

**WHEREFORE**, the Plaintiff respectfully requests the Court enter a Judgment:

a.      Declaring the Defendant unjustly enriched by virtue of receipt of the Transfers in the amount of $19,850.92 from WTP, which were under the direct control of the Olives;

b.      Requiring the payment of the Transfers in the amount of $19,850.92 to the Receiver; and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such transfers; and

c.      Awarding the Plaintiff damages, costs, and interest; and

d.      Granting such other and further relief as may be just and proper.

## **COUNT II– RESTITUTION/MONEY HAD AND RECEIVED AGAINST DEFENDANT**

39.     Plaintiff repeats and re-alleges and incorporate by reference the allegations set forth in paragraphs 1 through 32 of this Complaint as if fully set forth herein.

40.     WTP conferred a benefit on the Defendant when it transferred funds constituting property of WTP in the amount of $19,850.92 directly to the Defendant as payment for commissions.

41.     The Defendant received the benefit of the funds given to it by WTP and voluntarily accepted and retained the benefit conferred to which Defendant was not entitled.

42.     Equity and good conscience dictates that the Defendant should return and repay the funds received and any assets it may have acquired with those funds, to the Receiver for the benefit of all of the defrauded investors.

**WHEREFORE**, the Plaintiff respectfully requests the Court enter a Judgment:

a.     Declaring the Defendant make restitution to the Receivership Estate;

b.     Requiring the payment of the Transfers in the amount of $19,850.92 by Defendant to the Receiver; and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such transfers; and

c.     Awarding the Plaintiff damages, costs, and interest; and

d.     Granting such other and further relief as may be just and proper.

**WHEREFORE**, Plaintiff, Melanie E. Damian, in her capacity as the Receiver for We the People, Inc. of the United States, demands that judgment be entered in her favor and against the Defendant, National Annuity Consultants for damages, costs, and post-judgment interest and for such other and further relief as This Court deems just and proper.

Respectfully submitted this 6th day of December, 2013.

By: */s/ Kenneth Dante Murena*
KENNETH DANTE MURENA, P.A.
Florida Bar No. 147486
Email:  kmurena@dvllp.com
SARA PARIS, ESQ.
Florida Bar No. 0055024
Email:  sparis@dvllp.com
DAMIAN & VALORI LLP
*Counsel for the Receiver*
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
T: 305-371-3960, F: 305-371-3965